IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

STAND ENERGY CORPORATION, et al.,

          Plaintiffs,

v.

COLUMBIA GAS TRANSMISSION
CORPORATION, et al.,

          Defendants.

CIVIL ACTION NO. 2:04-0867
consolidated with civil action nos:
2:04-0868; 2:04-0869; 2:04-0870; 2:04-0871
2:04-0872; 2:04-0873; 2:04-0874

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendants' joint motion to dismiss plaintiff AtlantiGas Corporation (AtlantiGas). For the reasons that follow herein, the motion is **GRANTED**.

**I.
Factual Allegations and Procedural Background**

AtlantiGas is one of eight plaintiffs which filed claims against the owners of pipelines used in the transportation and storage of natural gas and eight natural gas shippers. In its complaint AtlantiGas alleges that the pipelines granted illegal preferential treatment to the eight natural gas shippers (select shippers). Defendants contend that AtlantiGas transferred its right to bring such claims as a part of the sale of its predecessor, Gaslantic, in 1998, and thus lacks standing to bring the present claims. Defendants have moved to dismiss Plaintiff's claims under Fed. R. Civ. Proc. 12(b)(1).

Gaslantic, a retail marketer of natural gas, was incorporated under the laws of Delaware in 1991. "The business conducted by Gaslantic consisted of purchasing supplies of natural gas in the wholesale market for resale to commercial and industrial end-user customers that burned the gas for heating or manufacturing purposes. Gaslantic's business also included providing advisory services to end-user natural gas customers in connection with the acquisition of natural gas by those customers." *See* Plaintiff's Response to Defendants' Motion to Dismiss at 2. Plaintiff alleges that because of the illegal parking and lending scheme between the pipelines and select shippers, Gaslantic began to lose end-user customers. As a result, Gaslantic "experienced a decline in business and revenues." *Id.* In September, 1998, pursuant to a Asset Purchase Agreement (Agreement), Gaslantic sold substantially all of its assets to PEPCO Services, Inc. (PSI) for $4.23 million. AtlantiGas was formed by what remained of Gaslantic after the transfer to PSI and existed primarily to receive contingent payments from PSI. As part of the Agreement, AtlantiGas agreed that it would not compete with Gaslantic or PSI.

Following the transfer of Gaslantic to PSI, two of the pipelines involved in the alleged illegal parking and lending scheme disclosed their conduct to the Federal Energy Regulatory Commission (FERC). PSI was a partner with one of the reporting pipeline companies. FERC instituted an investigation and in October, 2000, issued an Order approving a Stipulation and Consent Agreement with the reporting pipelines. Under the FERC Order the pipelines agreed to refund certain penalties and disgorge profits to the industry participants whom FERC found had been illegally excluded from the scheme. Subsequently, AtlantiGas filed two civil actions against PSI in the United Stated District Court for the District of Columbia. The parties voluntarily settled the cases and entered into a settlement agreement which released the claims against PSI and

contained a clause which allowed AtlantiGas to pursue future claims arising out of the alleged illegal parking and lending scheme against other participants. AtlantiGas then joined the other plaintiffs in the present action, bringing claims against the other pipelines and select shippers that are alleged to have participated in the parking and lending scheme.

## II.
## Standard of Review

A motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. It is axiomatic that a court must have subject matter jurisdiction over a controversy before it can render any decision on the merits. Defendants have moved to dismiss pursuant to Rule 12(b)(1) on the basis that Plaintiff lacks standing to bring the present claims.

A district court lacks subject matter jurisdiction over a case in which the plaintiff lacks legal standing. *Gilbert Imported Hardwoods, Inc. v. Holland*, 176 F.Supp.2d 569, 574 (S.D.W.Va. 2001) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1984)); *see also Interstate Traffic Control v. Beverage*, 101 F.Supp.2d 445, 449 (S.D.W.Va. 2000) ("A motion to dismiss for lack of standing challenges a plaintiff's claim to federal jurisdiction and is, thus, a 12(b)(1) motion.") (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure Civ.2d* § 1350 (2000)). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *Maryland Minority Contractor's Ass'n. Inc. v. Maryland Stadium Authority*, 70 F.Supp.2d 580, 586 (D.Md. 1998) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In considering the motion, a "district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991) (citing *Adams v. Bain*, 697 F.2d at 1219; *Trentacosta v. Frontier Pac. Aircraft Indus.*, 813 F.2d 1553, 1558 (9th Cir.1987)); *see also Maryland Minority Contractor's Ass'n, Inc.*, 70 F.Supp.2d at 586. To prevent dismissal, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citations omitted). A dismissal should only be granted in those instances in which "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citations omitted).

The Supreme Court has held that the standing requirement may be "perhaps the most important" condition of justiciability. *Allen v. Wright,* 468 U.S. 737, 750 (1984). Standing "ensures a litigant has a sufficient personal stake in an otherwise justiciable controversy such that the judicial process appropriately should resolve the controversy." *Burke v. City of Charleston*, 139 F.3d 401, 405 (4th Cir. 1998) (citing *Sierra Club v. Morton*, 405 U.S. 727, 731 (1972)). Specifically, to successfully assert Article III standing, the following requirements must be shown: "(1) that the plaintiff personally has suffered actual or threatened injury that is concrete and particularized, not conjectural or hypothetical; (2) that the injury fairly can be traced to the challenged action; and (3) that the injury is likely to be redressed by a favorable decision from the court." *Id.; see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

### III.
### Analysis

Before addressing the substantive arguments in Defendants' motion to dismiss, the Court must determine what law to apply to this dispute. Defendants removed this case to federal court because there is diversity of citizenship and the amount in controversy for each claim exceeds

$75,000. *See* 28 U.S.C. §§ 1332 and 1441(a). The Court therefore must apply the choice of law rules of West Virginia, the state in which this Court sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496 (1941).

The Asset Purchase Agreement at question contains a choice of law provision providing that the Agreement is to be construed under Delaware law. *See* Agreement at 29, § 10(h).[1] West Virginia law provides "that a choice-of-law provision 'will be upheld unless the chosen state has no substantial relationship to the parties to the transactions or unless the application of the law of the chosen state would be contrary to the fundamental public policy of' this state." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Coe*, 313 F.Supp.2d 603, 609 (S.D.W.Va. 2004) (quoting *Bryan v. Mass. Mut. Life Ins. Co.*, 364 S.E.2d 786, 790 (W.Va. 1987). The parties do not contest the application of Delaware law to the interpretation of the dispute. Additionally, the Court has no evidence that suggests that Delaware does not have a substantial relationship to the transaction nor that application of Delaware law would be contrary to the public policy of West Virginia; therefore, the Court will apply Delaware contract law in interpreting the Agreement.

Defendants contend that as part of the sale of Gaslantic Plaintiff transferred all of its assets, including any possible legal claims, to PSI. Under the agreement, PSI agreed to purchase and Gaslantic agreed to sell "all of the Acquired Assets for the consideration specified." *See* Agreement at 2. The Agreement went on to define "Acquired Assets" in part as:

...all right, title, and interest in and to all of the assets and properties of Seller owned, used or held for use by Seller primarily in connection with the Business, whether

---

[1]Specifically §10(h) provides: "This Agreement shall be governed by and construed in accordance with the domestic laws of the State of Delaware without giving effect to any choice or conflict of law provision or rule (either of the State of Delaware or any other Jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Delaware."

> tangible or intangible, whether real, personal or mixed, whether fixed, contingent or otherwise, and wherever located, including, without limitation, the following:...
> > (e) all of its credits, prepayments, prepaid expenses, and deferred items, claims, deposits, refunds, causes of action, chooses in action, rights or recovery, rights or set off, and rights or recoupment (including any such item relating to the payment of Taxes)...

*See* Agreement at 32. The Agreement also defined those assets that were not included in the transfer (Excluded Assets). The Excluded Assets were in part defined as,

> any rights or choses in action to the extent arising out of occurrences before the Closing and related to any litigation for which any liability would constitutes a Non-Assumed Liability[2], including third-party warranties and guarantees and all related claims, credits, rights of recovery and set-off and other similar contractual rights, as to third parties held by or in favor of Seller.

*Id.* at 33. Given the language of the Agreement, Defendants argue that Plaintiffs claims are included under Acquired Assets. Therefore, they contend that the claims arising out of conduct that took place prior to the transfer of Gaslantic to PSI were transferred to PSI under the Agreement. Furthermore, following the sale of Gaslantic, AtlantiGas existed solely to receive contingent payments from PSI and thus could not assert an injury arising out of post-Closing conduct that affected Gaslantic.

Plaintiff, however, contends that the language relied upon by Defendants only relates to claims pertaining to accounts payable. In support of its assertion, Plaintiff argues that section (d)[3]

---

[2]The Agreement defines Non-Assumed Liability as, "any duties, responsibilities, commitments, expenses, obligations or liabilities of Seller or relating to the Acquired Assets or to the Business (or which my be asserted against or imposed upon Buyer as a successor or transferee of Seller as an acquirer of the Acquired Assets or the Business or otherwise as a matter of law) that are not specifically scheduled as Assumed Liabilities..." *See* Agreement at 35.

[3]Section (d) specifically provides: "all billed and unbilled accounts receivable and all notes receivable relating to the Business (including those identified in Section (3)(q) of the Disclosure Schedule) ("Accounts Receivable")." *See* Agreement at 32.

which proceeds section (e) of the Acquired Assets definition relates to accounts receivable. *See* Agreement at 32. Therefore, in light of Gaslantic's business, when the sections are read together, section (d) deals with accounts receivable and section (e) pertains solely to accounts payable. Plaintiff goes on to argue that even if the Court accepts Defendants reading of section (e), the language of section (e) only transfers "deferred" claims, explaining that the modifier "deferred" is applied to all nouns which follow it. Therefore, the claims Plaintiff currently seeks to bring are not deferred claims because Gaslantic did not know they existed at the time of the Agreement and thus could not defer them. Finally, Plaintiff contends that the claims asserted could also fall under the definition of Non-Assumed Liability because any liability AtlantiGas could potentially face in the present suit as a result of "counterclaims or litigation expenses is not an Assumed Liability." *See* Plaintiff's Response to Defendants' Motion to Dismiss at 6.

Plaintiff also argues that the settlement agreement reached between AtlantiGas and PSI releasing PSI from the claims previously asserted by Plaintiff in the District of Columbia proves that AtlantiGas maintained the right to bring claims against the other Defendants as a successor-in-interest to Gaslantic. The Settlement and Release relied upon by Plaintiff provides that "AtlantiGas may pursue claims in the future against such entities as successor-in-interest to Gaslantic Corporation." *See* Defs.' Memorandum in Support of their Motion to Dismiss, Exhibit 2, at 5.

Under Delaware law the intent of the contracting parties is determined from the language of the contract. *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. 1992). "Only when there are ambiguities may a court look to collateral circumstances." *Id.* (citing *Klair v. Reese*, 531 A.2d 339, 343 (Del. 1987)). Therefore, "if the instrument is clear and unambiguous on its face" the court may not "consider parol evidence 'to interpret it or search for the parties' intentions.'" *Pellaton v.*

*Bank of New York*, 592 A.2d 473, 478 (Del. 1991) (quoting *Hibbert v. Hollywood Park, Inc.*, 457 339, 343 (Del. 1983)).

Given the broad language of the definition of Acquired Assets, the Court believes that Plaintiff's claims against Defendants are included under the Agreement as assets which were transferred to PSI. The Court rejects Plaintiff's reading of section (e) to only refer to accounts payable. While section (d) is clearly labeled to refer to accounts receivable, there is no language which limits section (e) to accounts receivable. Furthermore, the Court agrees with Defendants that a plain reading of section (e) applies deferred only to the word items and not to the remainder of the nouns in the section. Thus, Plaintiff's argument that only deferred claim were transferred also fails. Finally, because the Court finds that the language of the Agreement is "clear and unambiguous on its face," the Court may not consider the language of the Settlement and Release in its decision. *Pellaton v. Bank of New York*, 592 A.2d at 478.

## IV.
## Conclusion

The Court finds that any claims arising out of the alleged illegal parking and lending scheme were transferred to PSI as part of the sale of Gaslantic. As a result, Plaintiff has not suffered a redressable injury. Therefore, the Court **GRANTS** Defendants' motion to dismiss. The Court **ORDERS** the claims of Plaintiff AtlantiGas **DISMISSED** with prejudice.

The Court **DIRECTS** the Clerk to send a copy of this written opinion and order to counsel of record and any unrepresented parties.

ENTER: July 5, 2005

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE